IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PRICILLA THRASHER, | ) | Case No. 1:16-cv-2684 |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | THOMAS M. PARKER |
| | ) | |
| Defendant. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

**I.      Introduction**

Plaintiff, Pricilla Thrasher ("Thrasher"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits under Title XVI of the Social Security Act ("Act") and Disability Insurance Benefits under Title II of the Act. This matter is before the undersigned pursuant to 42 U.S.C. §1383(c)(3), 42 U.S.C. §405(g) and Local Rule 72.2(b).

Because the ALJ failed to comply with the requirements of the Social Security regulations for weighing medical source evidence, I recommend that the final decision of the Commissioner be VACATED and REMANDED.

**II.     Procedural History**

Thrasher applied for Supplemental Security Income (SSI) on April 25, 2013 alleging disability beginning on June 2, 2010. (Tr. 190-212) Thrasher's application was denied initially on July 9, 2013 (130-136) and after reconsideration on October 24, 2013. (Tr. 142-146) On

November 2, 2013, Thrasher requested an administrative hearing. (Tr. 147)

The administrative hearing took place before Administrative Law Judge (ALJ) Mary Lohr on March 16, 2015. (Tr. 58-98) On May 5, 2015, the ALJ issued a decision finding that Thrasher was not disabled. (Tr. 41-52) On September 20, 2016, the Appeals Council denied review, thereby rendering the decision of the ALJ the final decision of the Commissioner. (Tr. 1-5)

On November 3, 2016, Thrasher filed an appeal of the ALJ's final decision in this court. (ECF Doc. 1) Defendant answered and filed the transcript of the administrative proceedings on January 19, 2017. (ECF Docs. 9 and 10) Thrasher filed her brief on the merits on March 17, 2017 (ECF Doc. 13) and Defendant filed her brief on the merits on May 15, 2017 (ECF Doc. 15), making the matter ripe for this court's review.

**III. Evidence**

    **A. Personal, Educational and Vocational Evidence**

Thrasher was born on June 1, 1969 and was 43 years old on the date her application was filed. (Tr. 50) Thrasher dropped out of school in the seventh grade. (Tr. 66) She is able to communicate in English but cannot read. (Tr. 67) She has no past relevant work. (Tr. 50)

    **B. Medical Evidence**

Thrasher has severe impairments of cardiomyopathy, obesity and asthma, but her administrative appeal is related solely to her mental impairments. (ECF Doc. 13, Page ID# 1217) I will not, therefore, summarize the portions of the record dealing with other issues.

In December 2012, Thrasher was released to the Matt Talbot Center for Women as a condition of her parole by the Cuyahoga County Adult Probation Department. Upon admission, she was diagnosed with alcohol, cocaine and cannabis dependence. She was assigned a GAF

score of 58. (Tr. 352) Thrasher attended group counseling sessions and participated "as best she could when considering her cognitive and intellectual deficits." Her strengths included her willingness to cooperate, some sober supports, and a desire to improve intellectually. Thrasher was unable to read and her writing was poor. (Tr. 353) At discharge, bipolar disorder was added to Thrasher's diagnoses and she was assigned a GAF score of 48. (Tr. 352) Thrasher expressed fear when she was discharged to the ARCA halfway house. (Tr. 354)

On January 10, 2013, Thrasher was seen for an initial evaluation by Dr. Aileen Hernandez at Recovery Resources. Dr. Hernandez noted that Thrasher was friendly and cooperative, with good eye contact, normal thought process and her attention/concentration was adequate to track conversation. (Tr. 366) Thrasher reported having nightmares and flashbacks three to four times a week stemming from childhood molestation. Thrasher avoided sex and men. She was hypervigilant and easily startled with feelings of detachment and trouble relating to others. Thrasher reported that her depression began at age six. Her father was abusive to her mother and she witnessed it. Thrasher's depression symptoms included tearfulness, irritability, thoughts of hurting herself and others and hallucinations, both auditory and visual. She reported outbursts of anger, chronic insomnia and impaired concentration. Thrasher said that she previously carried a knife and was charged with felonious assault after stabbing the girlfriend of her ex-boyfriend. (Tr. 364) Dr. Hernandez diagnosed bipolar I disorder, most recent episode manic, severe without psychosis, and PTSD (Tr. 367) and prescribed Seroquel. (Tr. 365)

Thrasher returned to Dr. Hernandez on March 1, 2013. (Tr. 359) Dr. Hernandez again noted that Thrasher was friendly and cooperative with normal thought process. She had adequate memory and good judgment/insight. (Tr. 360) Thrasher reported improved sleep and reduced hallucinations since starting Seroquel. She requested an increase in her dosage for

additional sleep but Dr. Hernandez did not think that Thrasher needed additional sleep. Thrasher reported sleeping approximately 10 hours each night. Dr. Hernandez suspected that Thrasher may have been wanting to sleep more due to avoidance. (Tr. 360) Thrasher's diagnoses remained the same. (Tr. 360)

Thrasher began meeting with case management at Recovery Resources. During her sessions, she discussed her living arrangements, maintaining sobriety, attending AA meetings, and medicine compliance. She attended meetings from March 2013 to July 2013. (Tr. 512-513, 510, 503-504, 494-497, 571, 492, 490) On April 22, 2013, Thrasher expressed that life was treating her fair and treatment was good. She was tired of living with so many women but had a good attitude. She laughed and smiled during the session. On May 14, 2013, Thrasher reported to her counselor, Carly Scigliano, BA, that she was well and continuing to work to improve her stability with sobriety. She was having flashbacks from when she was on the street and dreaming that she was using again, which caused her to wake up feeling scared. (Tr. 500)

In September 2013, Thrasher reported to Dr. Hernandez that she had been feeling depressed and that the previous week her auditory hallucinations had returned for three hours and then resolved. She had yelled at them to get out of her head – but not when others were present. Thrasher reported staying in her room and avoiding other residents who were causing conflicts with peers and staff. (Tr. 793) On September 24, 2013, Thrasher followed up and was pleasant, cooperative, smiling and laughing. She had good eye contact and was making her needs known appropriately. (Tr. 792)

Notes from counseling on September 30, 2013 state that Thrasher had been taking her medication and was doing well with her mental health. She signed up for school and was waiting for a tutor. (Tr. 788)

4

Thrasher visited Dr. Hernandez on December 10, 2013. Thrasher continued to report auditory hallucinations that kept her up at night. (Tr. 778) She also reported continued stress from living at the ARCA House. (Tr. 779) Dr. Hernandez diagnosed psychotic disorder, NOS, and PTSD. Dr. Hernandez adjusted Thrasher's medications and added Risperdal. (Tr. 779)

On January 29, 2014, Thrasher reported that her mental health had been "really well." She stated that she stayed away from people when she was not feeling great to avoid getting into arguments with other ladies in the house. (Tr. 1059) On January 30, 2014, during group therapy she reported that the auditory hallucinations were "starting to come and go," weren't any quieter, and she was not sure if the Risperdal was helping. (Tr. 1063) Dr. Hernandez adjusted Thrasher's medications and increased Thrasher's dosage of Risperdal. (Tr. 1065)

In June 2014, Thrasher returned to Recovery Resources. She was not taking any medication but was still feeling depressed. (Tr. 1074) Her medications were restarted and she reported medication compliance on July 1, 2014. (Tr. 1076)

On July 23, 2014, Thrasher reported to Dr. Hernandez that her biggest issue was depression. Dr. Hernandez noted that she was not sure whether Thrasher's recent auditory hallucinations were psychotic in nature or if they were simply Thrasher's own thoughts. Thrasher had not had any auditory hallucinations for three months. She continued to have nightmares but acknowledged that she was watching a lot of violence on TV. Dr. Hernandez prescribed Celexa and Trazadone. (Tr. 1080)

Thrasher cancelled or missed several appointments with Resource Recovery in November and December 2014. (Tr. 1089, 1090, 1092)

### C. Opinion Evidence

#### 1. Treating Physician – Dr. Aileen Hernandez – September 2013

On September 13, 2013, Dr. Hernandez completed a questionnaire regarding Thrasher's mental capacity. (Tr. 770-771) She opined that Thrasher would rarely be able to respond appropriately to changes in routine settings and would rarely understand, remember and carry out simple job instructions, complex job instructions, and/or detailed job instructions. Dr. Hernandez opined that Thrasher would occasionally be able to: maintain attention and concentration for extended periods of two hour settings; deal with the public; work in coordination with or proximity to others without being distracted; deal with work stress; and/or complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 770) Dr. Hernandez noted that Thrasher could only pay attention for two minutes before forgetting the conversation. She also noted that Thrasher thought that others were out to get her. Dr. Hernandez identified Thrasher's diagnosis as PTSD. (Tr. 770-771)

#### 2. Reviewing Physician – Irma Johnston, Psy.D. – July 2013

Dr. Irma Johnston reviewed Thrasher's records on July 3, 2013 on behalf of the agency. Dr. Johnston opined that Thrasher's severe impairments included affective disorders and substance addiction disorder. She opined that Thrasher had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (Tr. 102-103) Dr. Johnston further opined that Thrasher was capable of understanding and performing simple two to three step routine work tasks without strict production quotas or time demands, with infrequent and superficial social demands. (Tr. 107)

### 3. Reviewing Physician – Todd Finnerty, Psy.D. – October 2013

On October 23, 2013, Dr. Todd Finnerty, Psy.D. reviewed Thrasher's medical records on reconsideration. He opined that Thrasher was limited to simple tasks with no strict production or time quotas in an environment with infrequent and superficial interactions. (Tr. 123) He found that Dr. Hernandez's opinion was less persuasive because it was without substantial support from other evidence of record.[1] (Tr. 124)

### D. Testimonial Evidence

#### 1. Thrasher's Testimony

At the May 5, 2015 hearing, Thrasher testified:

- She was born on June 1, 1969 and was 45 years old when the hearing took place. (Tr. 65)

- She was living on her own in the upstairs of a house. However, she had been staying with her brother for the last couple of weeks because the house's pipes needed to be repaired. (Tr. 66)

- She never had a driver's license; she used public transportation. (Tr. 66)

- Thrasher did not complete high school. She started using drugs and dropped out of school in 7th grade. Before she dropped out of school, she was in special education classes. (Tr. 67)

- She is unable to read; she has a reading disorder. (Tr. 67)

- She has had a few housekeeping jobs during her lifetime. (Tr. 68-69)

- She had been in jail or prison a couple of times – once for robbery and once for assault. (Tr. 70-71)

- She could not work because she did not get along with other people and "shut down." (Tr. 71) She also had back problems, a pace-maker, and asthma[2]. (Tr. 71-74)

---

[1] Supporting evidence from Dr. Hernandez was submitted after Dr. Finnerty reviewed Thrasher's records. (Tr. 778-796)
[2] Thrasher's physical impairments are irrelevant to this appeal. (Tr. 76-77)

- Thrasher was taking medication for depression, insomnia, high blood pressure, and asthma. She did not experience any side effects from the medication. (74-76)

- She sleeps approximately ten hours each night. (Tr. 81)

- Thrasher does not like to watch TV. She could not understand the story lines. (Tr. 80)

- Thrasher was able to grocery shop, prepare meals and shower. She was unable to do laundry. Her 14 year old son came to her house every other weekend to do laundry for her. (Tr. 80-83)

- She meets with her probation officer one time per month. (Tr. 81)

- She attended church services every week at a small Baptist church. (Tr. 83) Normally there were not many people at her church. When larger crowds attended, Thrasher went to another room to listen to the speaker so she would not need to be around a lot of people. (Tr. 84)

- Thrasher had been treating with Dr. Hernandez for about two years. She was also seeing a case manager through Recovery Resources on a weekly basis. (Tr. 85)

- Thrasher was hearing voices that would tell her to hurt herself. She heard them approximately every three weeks. (Tr. 86-87)

### 4. Vocational Expert's Testimony

Vocational Expert ("VE") Ted Macy testified:

- Thrasher's past work was that of a housekeeping/cleaner. (Tr. 89)

- The ALJ asked the VE to consider a hypothetical individual similar to the Thrasher in age, education and work history who was limited to light work with the additional limitations of frequent climbing ramps and stairs; never climbing ladders or scaffolds; frequent stooping, kneeling and occasional crouching and crawling. She could not be exposed to unprotected heights or moving mechanical parts. She must avoid humidity, wetness, extreme cold or heat. She was limited to occasional exposure to dust, odors, fumes and heat. She was limited to simple, routine and repetitive tasks, but not at a production rate pace. She was limited to simple work-related decisions; occasional interaction with supervisors and coworkers; and could not interact with the public. (Tr. 89-90)

- The VE opined that this individual would not be able to perform Thrasher's past work. However, she would be able to perform the jobs of wireworker, electronics worker, and an assembly press operator. There were a significant number of regional and national jobs for each of these positions. (Tr. 90-92)

- The ALJ then asked the VE to consider the same hypothetical individual but to reduce her exertional level to sedentary. (Tr. 92)

- The VE testified that this individual would be able to perform the jobs of table worker, final assembler, and bonder. The VE testified that there were a significant number of regional, state and national jobs available for these positions. (Tr. 92-93)

- Finally, the VE testified that most employers would not tolerate an employee missing more than one day of work per month. He also believed that most employers would not tolerate an employee being off task 20% of the workday. (Tr. 93-94)

**IV. Standard for Disability**

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[3]....

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

---

[3] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

9

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment,the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.R.F. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). Under the sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

**V.    The ALJ's Decision**

The ALJ issued a decision on May 5, 2015 finding:

1. Thrasher had not engaged in substantial gainful activity since April 25, 2013, the date of her application. (Tr. 46)

2. Thrasher had the following severe impairments: cardiomyopathy, obesity, affective disorder, anxiety disorder, and asthma. (Tr. 46)

3. Thrasher did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 46)

4. She had the residual functional capacity ("RFC") to perform light work except she could lift and carry 10 pounds frequently and 20 pounds occasionally; she could push and pull as much as she could lift and carry; she could sit, stand and walk up to 6 hours in a work day; could frequently climb ramps and stairs; could never climb ladders or scaffolds, could frequently stoop and kneel; could occasionally crouch and crawl; could never be exposed to unprotected heights,

moving mechanical parts, and/or humidity or wetness; could have occasional exposure to dusts, odors, fumes and pulmonary irritants; could never work in extreme cold or heat; was limited to simple, routine and repetitive tasks but not at a production rate pace; was limited to simple work related decisions; could have occasional interaction with supervisors and co-workers, but could never interact with the public; and when dealing with changes in the work setting, she was limited to simple work related decisions.   (Tr. 48)

5. Thrasher did not have any past relevant work. (Tr. 50)

6. She was born on June 1, 1969 and was 43 years old, which is defined as a younger individual age 18-44, on the date her application was filed. (Tr. 50)

7. Thrasher had a limited education and was able to communicate in English. (Tr. 50)

8. Transferability of job skills was not material to the determination of disability because her past relevant work was unskilled. (Tr. 50)

9. Considering Thrasher's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform. (Tr. 50)

Based on these findings, the ALJ determined that Thrasher had not been under a disability since April 25, 2013, the application filing date. (Tr. 51)

**VI.  Law & Analysis**

**A.  Standard of Review**

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v.*

*Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the court must determine whether proper legal standards were applied. If not, the Commissioner's decision must be reversed, unless the error was harmless. *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do

not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

### B.   Treating Physician Rule – Dr. Hernandez's Opinion

Thrasher argues that the opinions expressed by Dr. Hernandez were entitled to deference under the treating physician rule. Thrasher asserts that the ALJ erred in failing to assign controlling weight to this opinion and in failing to provide good reasons for giving it less than controlling weight. She also criticizes the ALJ decision because it does not reveal what weight, if any, was given to the Hernandez opinion. Defendant acknowledges that Dr. Hernandez was a treating physician but argues that the ALJ's decision to reject her opinion was supported by substantial evidence in the record.

The administrative regulations implementing the Social Security Act impose standards for weighing medical source evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). In making disability determinations, an ALJ must evaluate the opinions of medical sources in accordance with the nature of the work performed by the source. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013). The treating physician rule requires that "[a]n ALJ [] give the opinion of a treating source controlling weight if [s]he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with

13

the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

If the ALJ does not give the opinion controlling weight, then the opinion is still entitled to significant deference or weight that takes into account the length of the treatment and frequency of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the treating physician is a specialist. 20 C.F.R. § 416.927(c)(2)-(6). The ALJ is not required to explain how she considered each of these factors but must provide "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); see also *Cole*, 661 F.3d at 938 ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned."). "These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (July 2, 1996)) (internal quotation marks omitted).

A failure to follow these procedural requirements "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007). The Sixth Circuit Court of Appeals "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned." *Cole*, 661

F.3d at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)) (alteration in original) (internal quotation marks omitted).

> Regarding Dr. Hernandez's opinion, the ALJ stated:
>
> Dr. Hernandez opined that the claimant would have rare abilities to follow work rules, respond appropriately to changes, and understand, remember, and carry out even simple job instructions due to the claimant's post-traumatic stress disorder. In all other areas, Dr. Hernandez opined the claimant would have a constant to occasional ability to perform the non-exertional functions. Dr. Hernandez's opinion appears to be a reflection of the claimant's statements and not Dr. Hernandez's observations. For example, Dr. Hernandez notes that the claimant states she can only pay attention for two minutes before forgetting conversation.

(Tr. 49)

The ALJ did not assign controlling weight to the opinion of Dr. Hernandez or even acknowledge that she was a treating source. As Thrasher argues, the ALJ did not indicate the weight, if any, assigned to Dr. Hernandez's opinion. She simply indicated that the opinion appeared to be based on Thrasher's subjective complaints rather than Dr. Hernandez's own observations. The undersigned also notes that the ALJ assigned significant weight to the state agency consultants who did not review all of Dr. Hernandez's records (because the entire course of her treatment had not yet occurred at the time of the review). (Tr. 50)

The ALJ's rejection of Dr. Hernandez's opinion is poorly explained. She provided one reason for rejecting the opinion: that the opinion appeared to be merely a regurgitation of the claimant's statements. The opinion itself does not necessarily support this conclusion. Dr. Hernandez did not expressly indicate that she based her opinion on Thrasher's complaints (as some physicians do.) The Commissioner argues that Dr. Hernandez's use of quotation marks around the words "two minutes" signaled that she had based her conclusion on Thrasher's report to her. (ECF Doc. 15, Page ID# 1247). The undersigned is not convinced that the quotation marks around the words "two minutes" actually supports this argument. But even if they did,

15

there are other handwritten comments in the opinion that did not have quotation marks, do not appear to be subjective complaints, and which the ALJ never mentioned at all. For example, Dr. Hernandez also indicated that Thrasher would have difficulty with transition. This note had no quotation marks or any other indicator that it was Thrasher's statement. The ALJ's decision does not address this comment in any way. Contrary to the ALJ's conclusion, it is not clear whether the treating source's opinion was based only on subjective complaints. Thus, the ALJ's sole justification for rejecting Dr. Hernandez's opinion is equivocal at best.

Moreover, it is impossible to tell whether the ALJ took into account the length of the treatment, the frequency of the treatment relationship, the consistency of the opinion with the record as a whole, or the fact that Dr. Hernandez is a specialist. Some of these factors could actually have supported the ALJ's rejection of Dr. Hernandez's opinion. In fact, the Commissioner points to several sections of Dr. Hernandez's treatment notes that could have supported the conclusion reached by the ALJ. Unfortunately, the ALJ herself never set forth that sort of detailed analysis. And the court can neither speculate on the basis for the ALJ's decision nor accept the Commissioner's post-hoc rationalizations to support it. *Smart v. Comm'r,* 2012 U.S. Dist. LEXIS, *22 (S.D. Ohio December 7, 2012), quoting *Hyatt Corp. v. N.L.R.B.,* 939 F.2d 361, 367 (6th Cir. 1991).

The purpose of the "good reasons" requirement is two-fold. First, a sufficiently clear explanation, "lets the claimants understand the disposition of their cases," particularly where a claimant knows that her physician has deemed her disabled and therefore "might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Rogers,* 486 F.3d at 242 (quoting *Wilson* 378 F.3d at 544). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful

appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. In this case, the ALJ failed to provide an adequate explanation for her handling of Dr. Hernandez's opinion.

In some circumstances, an ALJ's failure to articulate "good reasons" for rejecting a treating physician opinion can be considered "harmless error." These circumstances are arise when (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," or (3) "the Commissioner has met the goal of § 1527(d) – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation. "*Wilson,* 378 F.3d at 547. *See also Cole,* 661 F.3d at 940. In the last of these circumstances, the procedural protections at the heart of the rule may be met when the "supportability" of the doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments. *See Nelson v. Comm'r of Soc. Sec.,* 195 Fed. Appx. 462, 470-471 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.,* 148 Fed. Appx. 456, 464 (6th Cir. 2005); *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. 2010). "If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Friend,* 375 Fed. Appx. at 551.

Here, the ALJ's stated reason for apparently rejecting the opinion of Thrasher's treating physician is inadequate. Moreover, the court cannot determine whether the ALJ fully considered the elements contemplated by 20 C.F.R. § 416.927(c)(2)-(6) including whether the medical evidence in the record as a whole supported Dr. Hernandez's opinion. For these reasons, the undersigned finds that the ALJ's failure to provide sufficiently specific "good reasons" for

rejecting Dr. Hernandez's opinion regarding Thrasher's limitations was not harmless error. Even if good reasons existed to reject the treating physician's opinion, the ALJ failed to articulate those reasons with sufficient specificity so as to allow for meaningful review. The Court should reject the ALJ's determination.

**VII.    Recommendation**

Because the ALJ failed to comply with the requirements of the Social Security regulations for weighing medical source evidence, I recommend that the final decision of the Commissioner be VACATED and that the case be REMANDED, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Report and Recommendation.

Dated: November 17, 2017

Thomas M. Parker
United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**